# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

UNIQUE BROOKS,                      )
                                    )
      Plaintiff,                    )
                                    )
vs.                                 )          No. 22-2077-SHM-tmp
                                    )
CORRECTIONAL OFFICER F/N/U FELTS,   )
ET AL.,                             )
                                    )
      Defendants.                   )
                                    )

---

## ORDER MODIFYING THE DOCKET;
## PARTIALLY DISMISSING THE COMPLAINT (ECF NO. 1) WITHOUT PREJUDICE;
## GRANTING LEAVE TO AMEND THE COMPLAINT'S CLAIMS THAT ARE DISMISSED WITHOUT PREJUDICE;
## PROCEEDING THE COMPLAINT'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANT LOWERY IN HIS INDIVIDUAL CAPACITY; AND DIRECTING THE CLERK TO ISSUE PROCESS FOR LOWERY

---

On February 9, 2022, Plaintiff Unique Brooks filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) Brooks was incarcerated at the Shelby County Criminal Justice Center (the "SCCJC") in Memphis, Tennessee when Brooks filed the complaint. (ECF No. 1-1 a PageID 9.) On May 13, 2022, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA"). (ECF No. 6.)

Brooks's claims arise from: (1) alleged assault on Brooks by Defendants Wilson, Strickland, Hamilton, and Martin on December 6, 2021 (the "2021 Incident") (ECF No. 1 at PageID 5) and (2) alleged assault on Brooks by Defendants Coleman, Lowery, Hamilton, and Martin on January 28, 2022 (the "2022 Incident") (*id*. at PageID 6). Brooks alleges claims of: (1) excessive force during the 2021 Incident and the 2022 Incident; (2) deprivation of medical care

after the 2021 Incident and the 2022 Incident; (3) verbal harassment during the 2021 Incident and the 2022 Incident; (4) unconstitutional segregated confinement after the 2021 Incident; (5) retaliation after the 2022 Incident; (6) inadequate prison grievance process about the 2021 Incident; (7) loss of good-time credits because of the 2021 Incident; and (8) denial of access to the courts because of the 2021 Incident. (*Id*. at PageID 5-6.) Brooks sues seven (7) Defendants in their official and individual capacities: (1) Correctional Officer F/N/U Felts; (2) Correctional Officer F/N/U Coleman; (3) Correctional Officer F/N/U Lowery; (4) Sergeant F/N/U Hamilton; (5) Correctional Officer N. Martin; (6) Correctional Officer Kyle Wilson; and (7) Correctional Officer F. Strickland. (*Id*. at PageID 2-4 (Defendants (1) – (7) *supra* are referred to as the "Individual Defendants").) Brooks seeks: (1) injunctive relief to "prevent Defendants from retaliation and harassment"; (2) sixteen million dollars ($16,000,000.00) in "damages"; (3) five million dollars ($5,000,000.00) in "punitive damages"; (4) Brooks's transfer to another correctional facility during the pendency of this case; and (5) "a right to law library." (*Id*. at PageID 7.)

The Clerk is directed to modify the docket to add these Defendants: (1) Shelby County, Tennessee[1] and (2) Ms. Flemings, a Counselor at the SCCJC (*see* ECF No. 1 at PageID 6).

The complaint (ECF No. 1) is before the Court.

For the reasons explained below: (1) the complaint (ECF No. 1) IS PARTIALLY DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief; and (2) Brooks's claim of excessive force against Lowery in Lowery's individual capacity SHALL PROCEED.

## I.   <u>LEGAL STANDARD</u>

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

---

[1] To the extent Brooks sues the Individual Defendants in their official capacities, Brooks's claims are treated as claims against the Individual Defendants' employer, Shelby County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 .S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Federal Rule of Civil Procedure 8 provides guidance on this issue. Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

3

## II.   REQUIREMENTS TO STATE A CLAIM UNDER § 1983

Brooks sues under 42 U.S.C. § 1983.  (ECF No. 1 at PageID 1.)  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## III.   ANALYSIS

### A.   Official Capacity Claims Against The Individual Defendants; And Claim Against Shelby County

To the extent Brooks sues the Individual Defendants in their official capacities, *see* ECF No. 1 at PageID 2-4, those claims are construed as claims against the Individual Defendants' employer, Shelby County.  *See Jones*, 296 F.3d at 421 (citing *Matthews*, 35 F.3d at 1049).

Shelby County may be held liable only if Brooks's alleged injuries were sustained pursuant to an unconstitutional custom or policy of Shelby County.  *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Brooks does not allege that he has been deprived of a constitutional right because of a policy or custom of Shelby County.  Instead, Brooks alleges violations of his constitutional rights in the particular circumstances of his confinement at the SCCJC during and after the 2021 Incident

4

and the 2022 Incident.  (ECF No. 1 at PageID 5-6.)  Brooks's claims against (1) Shelby County and (2) the Individual Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

**B.  Claims Of Excessive Force**

      **1.  Individual Capacity Claims Against Wilson, Strickland, Hamilton, And Martin, Arising From The 2021 Incident**

Brooks alleges that Wilson, Strickland, Hamilton, and Martin (the "2021 Defendants") "stripped [Brooks] naked" inside a "medical closet" and "assaulted" Brooks on December 26, 2021.  (ECF No. 1 at PageID 5.)  Brooks does not (1) describe the particular force used against him or (2) identify which 2021 Defendants used particular force against Brooks.  It is unclear from the complaint whether (1) an assault occurred or (2) the 2021 Defendants threatened to assault Brooks.  (*See id*. (alleging that "I was assaulted" and "I was … threatened with physical assault").)  After the 2021 Incident, Brooks was placed in solitary confinement, where, for "religious purposes," Brooks refused to "strip fully."  (*Id*.)  "[C]orrectional officers and recruits"[2] laughed at Brooks, used mace on Brooks, and spoke "racial slurs."  (*Id*.)  Unidentified SCCJC personnel placed restraints on Brooks "so tight [Brooks] lost feeling in my skin on the wrist area."  (*Id*.)  Brooks alleges that his "eyesight has not returned back to normal."  (*Id*.)

The Court construes Brooks's allegations as a claim of excessive force.

The Fourteenth Amendment's Due Process Clause protects pretrial detainees[3] in state custody against the use of excessive force that amounts to punishment.  *Leary v. Livingston Cnty*.,

---

    [2]  The complaint's use of the phrase "correctional officers and recruits" is construed as referring to the 2021 Defendants.  (*See* ECF No. 1 at PageID 5 (use of the phrase "correctional officers and recruits" follows Brooks's allegations about Wilson, Strickland, Hamilton, and Martin during the 2021 Incident).)

    [3]  The complaint is construed as alleging that Brooks was a pretrial detainee, rather than a convicted inmate, at the time of the 2021 Incident.  (*See* ECF No. 1 at PageID 6 (alleging "… I am not convicted of a crime as of yet and my right to a fair trial is hindered").)  Accordingly, Brooks's claim of excessive force is analyzed under the Fourteenth Amendment, rather than the Eighth

528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).

The Fourteenth Amendment's standard of objective reasonableness "turns on the 'facts and

circumstances of each particular case.'"  *See Kingsley*, 76 U.S. at 396-97 (rejecting a subjective

standard that takes into account a defendant's state of mind in pretrial detainee cases) (quoting

*Graham*, 490 U.S. at 396).  The Court must judge the reasonableness of a particular use of force

"from the perspective of a reasonable officer on the scene, including what the officer knew at the

time, not with the 20/20 vision of hindsight."  *Id*.  Under an objective reasonableness inquiry, "the

question is whether the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation."

*Graham*, 490 U.S. at 397 (citations omitted).  Under this standard, District Courts consider the

following factors: the relationship between the need for the use of force and the amount of force

used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

amount of force; the severity of the security problem at issue; the threat reasonably perceived by

the officer; and whether the plaintiff was actively resisting.  *Kingsley*, 76 U.S. at 397.  This list is

not exhaustive, but illustrates some of the "objective circumstances potentially relevant to a

determination of excessive force."  *Id*.

Brooks does not allege sufficient facts from which to plausibly infer that the 2021

Defendants used objectively unreasonable force during the 2021 Incident.  For example, Brooks

does not: (1) identify particular actions that particular 2021 Defendants took against Brooks.; (2)

allege facts demonstrating the circumstances that preceded the alleged use of mace on Brooks; or

(3) allege facts from which to determine whether Brooks posed a security threat to himself or

others before mace and restraints were used on Brooks.  Brooks alleges that he "may have a hairline

---

Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (analyzing inmate's claim of
excessive force under the Eighth Amendment); *Kingsley v. Hendrickson*, 76 U.S. 389, 396-97
(2015) (analyzing pretrial detainee's claim of excessive force under the Fourteenth Amendment).

fracture," but he does not allege an actual fracture.  He does not identify the relevant body part, the alleged use of force that caused the supposed fracture, the alleged aggressor, or a confirming diagnosis.  Brooks does not allege sufficient facts from which to plausibly infer that the 2021 Defendants used objectively unreasonable force on Brooks, given the facts and circumstances confronting the 2021 Defendants on December 6, 2021.  *See Graham*, 490 U.S. at 397.

Brooks's claim of excessive force against the 2021 Defendants is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief because Brooks alleges insufficient facts about the 2021 Incident's "objective circumstances."  *See Kingsley*, 576 U.S. at 397.

### 2.   Individual Capacity Claims Against Coleman, Lowery, Hamilton, And Martin, Arising From The 2022 Incident

Brooks alleges that, on January 28, 2022, Coleman, Lowery, Hamilton, and Martin (collectively, the "2022 Defendants") "physically assaulted" Brooks, after Ms. Flemings or Sergeant Felts[4] "became irate" about Brooks's telephone call to Brooks's bank and Brooks's attorney (the "Call").  (ECF No. 1 at PageID 6.)  Lowery banged Brooks's head "repeatedly" on the desk.  (*Id*.)  "They" handcuffed Brooks "until [his] hands turned blue."  (*Id*.)  The 2022 Defendants next took Brooks to the J Building, where they forced Brooks "to strip while officers maced me."  (*Id*.)

The Court construes Brooks's allegations as a claim of excessive force against the 2022 Defendants in their individual capacities.

### a.   Coleman, Hamilton, And Martin

---

[4] Because of Brooks's punctuation in the complaint, it is unclear whether Ms. Flemings or Sergeant Felts allegedly expressed disapproval of Brooks's telephone call.  Brooks's call allegedly triggered the 2022 Defendants' "assault" on Brooks.  (*See* ECF No. 1 at PageID 6 ("On 1/28/22 I was allowed to make a legal call to my financial institution and my attorney by Ms. Flemings the counselor, Sergeant C. Felts.  Heard the phone ringing as my financial institution transferred the call to another department.  She began to bang on the glass of the door …").)

Brooks does not identify particular force that Coleman, Hamilton, or Martin used on Brooks. Brooks instead alleges generally that Coleman, Hamilton, and Martin were part of a collective "physical[] assault[]" on Brooks. (ECF No. 1 at PageID 6.) There are insufficient factual allegations in the complaint to demonstrate that Coleman, Hamilton, and Martin used objectively unreasonable force on Brooks given the facts and circumstances confronting those three Defendants on January 28, 2022. *See Graham*, 490 U.S. at 397. Brooks's excessive force claim against Coleman, Hamilton, and Martin is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### b. Lowery

Brooks alleges that Lowery "banged [Brooks's] head repeatedly on the desk" because Ms. Flemings or Sergeant Felts was "irate" about the Call. (ECF No. 1 at PageID 6.) The complaint alleges that Brooks had permission from "the Counselor and Ms. Jones" to make the Call. (*Id.*) Repeatedly "bang[ing]" Brooks's head on a desk is a disproportionate degree of force in response to Brooks's making the Call. There are no factual allegations in the complaint from which to plausibly infer that Brooks posed a security threat to himself or others at the time of the Call. Given these facts and circumstances, Brooks alleges sufficient facts from which to plausibly infer that Lowery used objectively unreasonable force on Brooks during the 2022 Incident. *See Kingsley*, 76 U.S. at 397; *Graham*, 490 U.S. at 397. Brooks's excessive force claim against Lowery in his individual capacity SHALL PROCEED.

### C. Claim Of Denial Of Medical Care After The 2021 Incident And The 2022 Incident

Brooks alleges he "was denied medical attention" after the 2021 Incident. (ECF No. 1 at PageID 5.) Brooks alleges that, after the 2022 Incident, he is "being denied medical … privileges in retaliation to the lawsuit I have pending against the correctional staff." (*Id.* at PageID 6). Brooks's allegations are construed as a claim of deliberate indifference to Brooks's medical needs.

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)).   Like an Eighth Amendment claim, a Fourteenth Amendment claim of deliberate indifference has both an objective and a subjective component.   *Id.*   To satisfy the objective component, "the detainee must demonstrate the existence of a sufficiently serious medical need." *Id*. (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)).   "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* at 891 (quoting *Spears*, 589 F.3d at 254).   A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### 1. The 2021 Incident

Brooks alleges that his "eyesight has not returned back to normal" after being "maced" during the 2021 Incident.   (ECF No. 1 at PageID 5 (alleging that "I was blinded while being stripped in a closet by the officers").)   Although the "lingering unpleasant effects of mace" do not amount to a "serious medical need" in several jurisdictions, *see*, *e.g.*, *Boyce v. McKnight*, No. 14-C-0418, 2015 WL 8778330, at *10 (N.D. Ill. Dec. 15, 2015) (citing cases), Brooks alleges that he suffered damage to his eyesight because of the mace.   When Brooks filed the complaint, Brooks's vision impairment had persisted for more than two months.   (ECF No. 1 at PageID 5.)   Brooks alleges more than "temporary discomfort" from mace.   *See Boyd v. Copeland*, No. 6:18-cv-6302, 2022 WL 2533315, at *5 (W.D.N.Y. July 7, 2022) (citing cases).   For purposes of the objective component of Brooks's claim of deliberate indifference, Brooks alleges sufficient facts about the 2021 Incident to demonstrate a serious medical need.

Brooks does not, however, allege sufficient facts demonstrating the 2021 Defendants subjectively knew of, yet disregarded, Brooks's need for eyecare after the 2021 Incident. There are no factual allegations in the complaint about the 2021 Defendants' states of mind about Brooks's alleged eye condition after the 2021 Incident. Brooks fails to satisfy the subjective component of a deliberate indifference claim.

Brooks's denial-of-medical-care claim against the 2021 Defendants is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### 2. The 2022 Incident

Brooks alleges that (1) his head was "banged" on the desk, (2) his hand turned blue because of tight handcuffs, and (3) he was maced during the 2022 Incident. (ECF No. 1 at PageID 6.) Brooks does not, however, allege the particular injuries for which he vaguely contends that he is "being denied medical … privileges." (*Id*.) There are insufficient factual allegations in the complaint from which to infer that Brooks suffered a serious medical need during the 2022 Incident.

The complaint fails to satisfy the subjective component of Brooks's claim. Brooks does not allege facts demonstrating the 2022 Defendants subjectively knew of, yet disregarded, Brooks's need for medical care after the 2022 Incident. Without factual allegations demonstrating that the 2022 Defendants had a sufficiently culpable state of mind in denying eyecare to Brooks after the 2022 Incident, Brooks fails to satisfy the subjective component of a deliberate indifference claim.

Brooks's denial-of-medical-care claim against the 2022 Defendants is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### D. Claims Of Verbal Harassment During The 2021 Incident And The 2022 Incident

Brooks alleges that the 2021 Defendants "referred to [Brooks] as a 'nigger' or 'nigga'

…and called [Brooks] racial slurs" during the 2021 Incident.  (ECF No. 1 at PageID 5-6.)  Brooks

alleges that Ms. Flemings "referred to [Brooks] as a 'little nigger'" during the 2022 Incident.  (*Id*.

at PageID 6 (alleging that "I am being called nigger on purpose").)  Brooks's claim of verbal

harassment by the 2021 Defendants and the 2022 Defendants fails as a matter of law.

It is well settled that verbal abuse or harassment at the hands of prison officials does not

constitute a deprivation of constitutional rights.  *See*, *e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d

539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly

unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Ivey v.

Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment."); *Violett v. Reynolds*, 76 F.

App'x 24, 27 (6th Cir. 2003) (holding that an officer's "reprehensible" action of offering sexual

favors to the plaintiff-inmate did "not rise to the level of a constitutional violation").  "Just as the

Constitution 'does not mandate comfortable prisons,' *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)

(quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), it does not mandate polite prison

guards." *Wingo v. Tennessee Dep't of Corr.*, No. 10-1259, 2011 WL 13186535, at *4 (W.D. Tenn.

Aug. 5, 2011).

Brooks's claim of verbal harassment by the 2021 Defendants and by Ms. Flemings is

DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

**E.  Claim Of Retaliation After The 2022 Incident**

Brooks alleges that, since the 2022 Incident, he is "being denied medical, legal, and other

privileges in retaliation to the lawsuit I have pending against the correctional staff."  (ECF No. 1

at PageID 6.)  Brooks does not describe particularly the "privileges" that unspecified Defendants

are denying.

The Court reviews Brooks's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution"). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. Filing a prison grievance also is protected conduct. *Hill*, 630 F.3d at 472. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76).

Brooks fails to satisfy the causal connection element of his claim of retaliation. For example, Brooks does not: (1) allege the dates of the alleged deprivations of privileges or the injuries, if any, that Brooks has suffered; (2) describe the nature of the "lawsuit" he has filed against unspecified members of "correctional staff"; (3) set forth the date on which he filed the lawsuit; (4) allege facts demonstrating that the defendants in Brooks's "lawsuit" played a role in denying "medical, legal, and other privileges" to Brooks. (*See* ECF No. 1 at PageID 6.) There are no factual allegations in the complaint from which to plausibly infer a close temporal proximity between (1) Brooks's filing of "the lawsuit" and (2) deprivation of "privileges" to Brooks. Brooks

alleges no facts suggesting the 2022 Defendants' retaliatory motive in denying the vaguely-referenced "privileges."

Brooks's claim of retaliation arising from the 2022 Incident is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief because Brooks does not satisfy the causal connection element of his claim.

### F.   Claim Of Unconstitutional Segregation After The 2021 Incident

Brooks alleges that he is "currently in solitary [sic] to keep me from filing a lawsuit and to hinder my right to a fair trial."  (ECF No. 1 at PageID 5.)

A prisoner has no "inherent constitutional right to avoid … segregated housing."  *Hill*, 630 F.3d at 469.  Mere placement in administrative segregation itself does not implicate protectible liberty interests under the Due Process Clause.  *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  For segregation to be actionable, the Supreme Court has held that an inmate must show that his segregated confinement rose to the level of "atypical and significant hardship in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (holding that "to implicate a cognizable liberty interest in the prison setting, ... the discipline must be unusual and substantial 'in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484).  A plaintiff must demonstrate "restraint" that imposed an atypical and significant hardship.  *Id.* at 790–91.

The duration of an inmate's segregated confinement is relevant to, but not solely determinative of, whether his confinement imposes atypical and significant hardship on him.  *See Harden-Bey*, 524 F.3d at 795.  The Sixth Circuit also considers the following factors, in their totality, when determining whether an inmate's segregation implicates a liberty interest by imposing atypical and significant hardship on the inmate: (1) the reasons for an inmate's continued confinement in segregation; (2) the conditions of an inmate's confinement "'in relation to the ordinary incidents of prison life'"; and (3) the impact the confinement will have on the

inmate's sentence. *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin*, 515 U.S. at 472, 483); *see Jones v. Raye*, No. 12-6567, 2014 WL 10319865, at *1–*2 (6th Cir. June 3, 2014) (holding that the plaintiff-inmate's two-and-a-half-year confinement "may have been atypical," but was for "good reason" because he assaulted corrections officers).

Brooks does not identify how long he has been in "solitary." (*See* ECF No. 1 at PageID 5.) Even if the Court liberally construes the complaint to suggest that Brooks was in "solitary" from the 2021 Incident until the date Brooks filed the complaint, that two month period of segregation is insufficient to demonstrate atypical and significant hardship on Brooks.[5] Brooks does not allege facts describing the conditions of "solitary," much less conditions that (1) differ "'in relation to the ordinary incidents of prison life'" or (2) differ from conditions experienced by other segregated inmates. *See Sandin*, 515 U.S. at 484 & 487; *Baker*, 155 F.3d at 813.[6] Even if Brooks were in segregation from December 6, 2021 (*see* ECF No. 1 at PageID 5) through February 9, 2022 (*see id*. at PageID 1), the law is well-settled in the Sixth Circuit that an inmate's temporary loss of privileges and restrictions on privileges do not rise to the level of constitutional magnitude. *See Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding that the plaintiff-

---

[5] *See, e.g.*, *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (fourteen months of segregation did not constitute atypical and significant hardship); *Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (eighteen months of segregation did not constitute atypical and significant hardship); *Albiola v. Pugh*, No. 4:14-CV-1645, 2015 WL 1915289, at *6 (N.D. Ohio Apr. 27, 2015) (one hundred thirty-seven days of segregation did not constitute atypical and significant hardship). *Cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (thirteen years in administrative segregation gave rise to a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years in segregation was "atypical" and enough to implicate a liberty interest); *Baker*, 155 F.3d at 812 (approximately two and one-half years' confinement in segregation did not rise to level of "atypical and significant" hardship while plaintiff-inmate's participation in violent conduct inside the prison was investigated).

[6] *See, e.g.*, *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (confinement in a cell for twenty-three hours per day did not impose an atypical and significant hardship); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.3 (6th Cir. 1995) (confinement in disciplinary segregation for twenty-three hours and ten minutes per day did not implicate a liberty interest) (internal citation omitted).

inmate did not have a "liberty interest in freedom from ... penalties").[7]  Brooks does not allege that

he was actually harmed by conditions in "solitary."

Brooks's claim of unconstitutional segregation is DISMISSED WITHOUT PREJUDICE

for failure to state a claim to relief.  Brooks does not allege sufficient facts demonstrating that

"solitary," *see* ECF No. 1 at PageID 5, placed "atypical and significant hardship on him in relation

to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 484.

### G.  Claim Of Inadequate Prison Grievance Process About The 2021 Incident

Brooks alleges that he has "been denied grievance forms" about the 2021 Incident.  (ECF

No. 1 at PageID 5.)[8]  Brooks also alleges that he has "not received [a] response" to his complaint

under the Prison Rape Elimination Act, 42 U.S.C. §§ 15601, *et seq.*  (*Id.*)  The Court construes

Brooks's allegations as a claim that the SCCJC's prison grievance process is inadequate.

"[T]here is no constitutionally protected due process right to unfettered access to prison

grievance procedures."  *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).

Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young v.*

*Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3

F. App'x 346, 348 (6th Cir. 2001) (holding that the plaintiff's allegation that jail staff ignored the

grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right

to an effective prison grievance procedure").  Even if a grievance system were constitutionally

---

[7]  *See also Dixon v. Morrison*, No. 1:13-cv-1078, 2013 WL 6512981, at *7 (W.D. Mich. Dec. 12, 2013) (holding that the plaintiff-inmate's temporary loss of privileges "was not atypical and significant"); *Durham v. Jeffreys*, No. 1:13-cv-226, 2013 WL 6147921, at *3 (S.D. Ohio Nov. 22, 2013) (holding that the plaintiff-inmate's one-hundred-day loss of recreational privileges and telephone use did not implicate a constitutionally protected liberty interest); *Johnson v. Vroman*, No. 1:06-CV-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (holding that the plaintiff-inmate's six-month restriction on telephone privileges did "not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life").

[8]  Brooks further alleges that his grievances about "prior incidents with the officers at the penal farm" were "denied every time."  (ECF No. 1 at PageID 5.)  The vaguely-referenced "prior incidents" and previous grievances are not before the Court.

guaranteed, Brooks does not allege that the 2021 Defendants' conduct described in the complaint adversely affected Brooks's "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted). Brooks's allegation that the 2021 Defendants arbitrarily denied him access to the SCCJC's grievance process does not state a claim to relief under § 1983. *See Walker*, 128 F. App'x at 445.

Brooks's claim of inadequate grievance process about the 2021 Incident fails to state a claim to relief and is DISMISSED WITHOUT PREJUDICE.

### H. Claim Of Unconstitutional Loss Of Good-Time Credits Due To The 2021 Incident

Brooks alleges that he "lost good time for this [2021] [I]ncident." (ECF No. 1 at PageID 5.) Brooks's allegation is construed as a claim of loss of previously-earned good-time credits, rather than a claim of deprivation of the right to earn[9] good-time credits in the future.

In *Wolff v. McDonnell*, 418 U.S. 539 (1975), the Supreme Court held that, when a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires: (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[;]" and (3) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-64 & 566. The procedural protections set forth in *Wolff* are required only when a liberty interest is at stake -- *i.e.*, when "the [disciplinary] restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents

---

[9] "[P]risoners have no liberty interest in opportunities to *obtain* good-time credits." *Martin v. O'Brien*, 207 F. App'x 587, 589-90 (6th Cir. 2006) (emphasis added); *see also Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992). "The loss of the opportunity to *earn* good-time credits, which might lead to earlier parole," does not constitute a constitutionally cognizable liberty interest which triggers the protection of the Due Process Clause. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (emphasis added) (citing *Meachum v. Fano*, 427 U.S. 215, 229 n.8 (1976)).

of prison life.'"  *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484).

Brooks does not allege facts demonstrating that his supposed loss of good-time credits imposed an atypical and significant hardship on him sufficient to violate due process.  *See Sandin*, 515 U.S. at 484-86.  There are no factual allegations in the complaint from which to plausibly infer that Brooks had a liberty interest in the outcome of a disciplinary hearing that imposed the credit loss.  For example, Brooks does not (1) identify the number of credits he lost, (2) describe how the alleged credit loss adversely impacted Brooks's conditions of confinement or sentence length, or (3) allege facts about the disciplinary hearing, if any, he received.  Even if Brooks had a liberty interest in the allegedly-reduced good-time credits, Brooks does not demonstrate that a disciplinary hearing, pursuant to which he lost credits, occurred other than in accordance with *Wolff*.  *See Wolff*, 418 U.S. at 563-64 & 566.

Brooks fails to allege sufficient facts demonstrating a cognizable due process claim of unconstitutional loss of good-time credits due to the 2021 Incident,[10] and that claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### I.   Claim Of Denial Of Access To The Courts Due To The 2021 Incident

---

[10]  To the extent Brooks alleges that his loss of good-time credits will lengthen his sentence, Brooks's claim is barred by the doctrine in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (a prisoner cannot bring a claim for damages under § 1983 where his success in such a claim would "necessarily invalidate" his conviction or sentence).  *See also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (a prisoner cannot bring a claim under § 1983 challenging prison procedures used to deny him "good time credits" where his success in such a claim would "necessarily imply the invalidity of the punishment imposed"); *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (an inmate's "§ 1983 action is barred – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration"); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (an inmate alleging entitlement to speedier release must pursue such relief through a habeas corpus action, rather than § 1983).  The exclusive federal remedy for a prisoner requesting restoration of good-time credits is a writ of habeas corpus.  *See Thomas v. Lebo*, No. 16-2991, 2018 WL 4375113, at *3 (W.D. Tenn. Sept. 13, 2018) (internal citation omitted).

Brooks alleges that he is "currently in solitary confinement to keep me from filing a lawsuit and to hinder my right to a fair trial."  (ECF No. 1 at PageID 5.)  The Court liberally construes Brooks's allegation as a claim of denial of access to the courts.

Prisoners retain a constitutional right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)), which "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391.  Prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.  To have standing to pursue a First Amendment claim for denial of access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.

Brooks neither identifies the claims he allegedly seeks to pursue in "a lawsuit" nor demonstrates that those claims are nonfrivolous.  (*See* ECF No. 1 at PageID 5.)  Brooks does not allege facts demonstrating how his solitary confinement after the 2021 Incident hindered Brooks's effort to file a nonfrivolous lawsuit.  Brooks's claim of denial of access to the courts is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

## J.  Claim For Transfer To A Different Prison And For Access To The SCCJC's Law Library

Brooks seeks "removal from this correctional facility while [this] lawsuit is pending and a right to law library."  (ECF No. 1 at PageID 7.)  Brooks does not allege facts demonstrating that persons or conditions at the SCCJC are threatening Brooks's health and safety while this case is pending.  Brooks does not describe his present terms of access to the SCCJC's law library, and he does not describe the terms of library access he seeks.

"[A] federal court only has the authority to order a state to transfer a prisoner in the rare and extreme situation where an inmate's life is in imminent or grave danger." *Neal v. Woosley*, No. 4:20-cv-P167-JHM, 2020 WL 7327313, at *4 (W.D. Ky. Dec. 11, 2020). Brooks's bare allegation that "I am in fear for my health, safety, and future freedom," *see* ECF No. 1 at PageID 5, does not allege facts supporting Brooks's conclusory allegation about imminent danger.

Brooks's claim for transfer to a correctional facility is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief. Brooks does not allege facts demonstrating risk of grave danger to him that would permit the Court to order Brooks's transfer to a different facility. To the extent Brooks seeks additional or different terms of access to the SCCJC's law library, Brooks should file a grievance with the SCCJC.

## IV.   <u>AMENDMENT UNDER THE PLRA</u>

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree

with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend the complaint under the conditions set forth below.

## V.   <u>CONCLUSION</u>

For the reasons set forth above:

A.   Brooks's: (1) official capacity claims against the Individual Defendants and claim against Shelby County; (2) claim of excessive force against Wilson, Strickland, Hamilton, and Martin in their individual capacities; (3) claim of excessive force claim against Coleman, Hamilton, and Martin in their individual capacities; (4) claim of denial of medical care against (a) the 2021 Defendants and (b) the 2022 Defendants; (5) claim of verbal harassment during the 2021 Incident and the 2022 Incident; (6) claim of retaliation due to the 2022 Incident; (7) claim of unconstitutional segregation; (8) claim of inadequate prison grievance process about the 2021 Incident; (9) claim of unconstitutional loss of good-time credits due to the 2021 Incident; (10) claim of denial of access to the courts due to the 2021 Incident; and (11) claim for transfer to a different correctional facility and for access to the SCCJC's law library (collectively, the "Dismissed Claims") (ECF No. 1) are DISMISSED WITHOUT PREJUDICE in their entirety for failure to state a claim on which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2);

B.   Leave to amend the Dismissed Claims is GRANTED.  Amended claims must be filed within twenty-one (21) days after the date of this Order.  An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Brooks's claims.  An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings.  Brooks must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to

support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count.  If Brooks fails to file an amended complaint within the time specified, the Court will dismiss the Dismissed Claims with prejudice and enter judgment as to the Dismissed Claims.  The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g).  *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021); and

C.     Brooks's claim of excessive force against Lowery in his individual capacity (ECF No. 1) SHALL PROCEED.  The Clerk is ORDERED to issue process for Defendant Lowery and to deliver that process to the U.S. Marshal for service.  Service shall be made on Lowery pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective.  All costs of service shall by advanced by the United States.  It is further ORDERED that Brooks shall serve a copy of every subsequent document he files in this case on the attorney for Lowery, or on Lowery personally if Lowery is unrepresented.  Brooks shall make a certificate of service on every document he files.  Brooks shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[11]  Brooks is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED, this 3d day of October, 2022.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[11]  A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.